May it please the court, I'm Bradley J. Hamburger, and I represent Petitioner Raul Quijada Coronado. I'd like to reserve two minutes for rebuttal. Okay. Mr. Coronado is here today with his family, various U.S. citizens, two children, and his sister. He is a 71-year-old legal permanent resident who has resided in this country for 56 years. All that Mr. Coronado is asking from this court is another opportunity to present his case for cancellation or removal, but this time with the assistance of competent counsel and before a neutral immigration judge. I want to focus first on the ineffective assistance of counsel issue. The government in its brief does not dispute that Mr. Coronado's former counsel, Mr. Budakoffer, that his assistance was ineffective. They don't dispute that. The only issue that they address is whether or not that ineffective assistance resulted in prejudice to Mr. Coronado's case. And what's the standard for prejudice? Yeah. And the standard for prejudice in this circuit is whether or not the deficient performance may have affected the proceedings. So it's a fairly lenient standard. It is. You do not have to show whether or not you would win or lose. You don't have to make a prima facie case. All you need are plausible grounds for relief. So that's really the issue here on the ineffective assistance of counsel aspect of this case, which is sufficient on its own to grant the relief that we're seeking. Now, on whether there was prejudice, given that standard, I submit there can be no serious doubt that there were plausible grounds for relief, the relief that we requested here, which was cancellation and removal. Mr. Coronado, he arrived in this country when he was a minor, when he was 14 years old. He spent five decades in the United States as a legal permanent resident, working, paying taxes, supporting his family. He has no family in Mexico. He now faces permanent separation from his children who are U.S. citizens, his family members who are U.S. citizens. This is really the exact type of situation where cancellation and removal is at least plausible. We're not saying it's going to be guaranteed. We recognize, I recognize that he has a criminal record. That's why he's in removal. That's why cancellation and removal even exists. But he meets all the basic requirements of cancellation and removal. And on the discretionary factors, I think at least it's a plausible case. And in fact, the immigration judge, who I submit we've discussed in the briefs, was quite hostile towards Mr. Coronado and I believe may have prejudged the case. Even he recognized that this was a close case. What authority do we have to direct that this be heard by a different immigration judge? Do we have any such authority? Well, I believe there are cases. I don't know one off the top of my head. I believe there have been cases where that has been directed. But I think you can do that given that, especially if you find that the immigration judge here lacked it neutrality, I think sending it back to the same immigration judge is going to get potentially the same result. And so I would submit that it would be somewhat futile to go back to the same judge. But, Your Honor, we will accept whatever relief the court believes that it can grant. And if you believe you have to send it back to the same immigration judge, then I suppose. I'm sure we have the authority to suggest or to recommend or request. The only question I have is whether we have the authority to direct. I'm not aware. I believe I did see, and I believe it's a Third Circuit case, unfortunately. It's one of the Third Circuit cases that we cited in our brief, so it's not in this circuit, where there had been repeated problems of a particular immigration judge. And without citing any authority, the Third Circuit directed the BIA to send the case to a different immigration judge. Unless we ask for a further briefing, don't worry about that question. But you see the separation of powers issues that could arise. It's one thing if we reassign it to a different district court judge, but now we'd be instructing the executive branch, we want this employee working on the case and not that employee working on the case. Yeah, that is an interesting issue. And, you know, as I mentioned earlier, I think we would be happy with any immigration judge. We haven't really briefed. The government hasn't raised the separation of powers issue. I don't believe the government contested. We did, in the opening brief, ask for submission to a different immigration judge. The government did contest our claims, but didn't specifically take any issue with that request at relief to assign the matter to a different immigration judge. Mr. Coronado also no longer lives anywhere near this immigration judge, so as a practical matter, it may be moot in that now he lives in Palmdale and this immigration judge is in El Centro. So as a practical matter, you know, it may not make any sense to have it before the same judge. So I do submit there was prejudice here. There was prejudice here most, you know, there are many reasons. One is the failure to elicit favorable information. That's what the government focuses on in its brief. But that wasn't the only ineffective assistance of counsel here. His counsel worked pretty hard to solicit unfavorable information. He did do that. His examination was quite hostile. You know, when I first got involved in this case, I had to go get the audio recordings because I thought the transcript was wrong. I thought it was the judge who was asking some of these questions. It was really quite shocking. And I think it stems from now we know, based on what's in the record, it stems from the lack of preparation, no investigation of the case, no meetings with Mr. Coronado or his family members. That's undisputed. That's in the record. That was before the BIA. But then in addition to putting aside the harmful, you know, direct examination, there was cross-examination by the government along with the judge, which was quite damaging to Mr. Coronado. In fact, it led directly to the immigration judge's key conclusions about the extent and scope of Mr. Coronado's supposed drug usage, his history of drugs. On redirect, Mr. Brutakoffer didn't do anything to clarify the record, rehabilitate Mr. Coronado on that issue. The questions he asked were about — Excuse me. I just have one question. What was the available rehabilitation in your view? I believe the available rehabilitation was that he could have clarified that Mr. Coronado was not a drug addict for 20 years with only three to four months of sobriety, which is what the immigration judge concluded. Earlier in the hearing, Mr. Coronado denied that he was a drug addict. There are statements that he, you know, never bought drugs. He only used them casually. I guess it was one way you could frame it. And so basically clarify — and there also was inconsistencies about the frequency of his use. And even the government recognized that in its questioning. And what ended up happening was the immigration judge, because he was left unrehabilitated on that issue, the immigration judge took the most unfavorable answers and went with those answers. Now, I'm not saying that after you redirect that the immigration judge would have come to a different conclusion, but I think it's very much possible — Well, doesn't that matter to our analysis? If the available rehabilitation is, I would say, just to pick a word, very modest in scope, how does that fit into the prejudice analysis that we are required to do? Yeah, I think the prejudice analysis, it goes back to the standard for prejudice, which, as I mentioned earlier, only requires a plausible claim. All it requires is that there may have been a different outcome, there may have been some impact. And so I would submit that the failure to rehabilitate Mr. Coronado after his testimony, damaged testimony on one of the key issues here, which was what was his history with drugs, the proceeding may have been different. And so I think that is how it applies to the standard here. My time is running down. I was going to say, you've got about a minute. Do you want to save it? Yes, I do. Thank you, Your Honors. Good morning, Your Honor. May it please the Court, Dan Goldman on behalf of the Attorney General. The government asked this Court to uphold the Board's decision from 2015 and deny the petition for review. Ultimately — Am I correct in assuming that you contest only the question of prejudice? I was going to address that, Your Honor. And I think the point to be made there is that the Board did not make a finding as to whether Mr. Bodocoffer was effective or ineffective. The Board jumped to the prejudice question because that finding was dispositive. So we can't, on behalf of the government, defend a finding that was not made by the Board. So I was planning to address that. Ultimately, Your Honor, this case is about prejudice. It's about Mr. Coronado's failure, both on the ineffective assistance claim and on the due process claim, to establish prejudice. Certain things in this case are relatively undisputed. The positive equities for Mr. Coronado were strong. Over 50 years residence in this country, a solid work history, family ties here in the United States. All of those things were, at the end of the day, and even today, undisputed. And he's given the credit, he's given full credit for that by the immigration judge and by the Board both times around. That's what makes this, that's what made this, in the immigration judge's words, a close case. Where he ran into trouble was on the negative side of the ledger. And he did not, through counsel in 2011 or through counsel in 2014, after this case remanded, was remanded, he did not bring forward effective evidence to mitigate, to negate, essentially, the negatives. But that's part of the ineffective assistance counsel claim, that he didn't bring forward any evidence to negate it or mitigate it. It is, Your Honor, with regard to what happened in 2011, but I would respectfully suggest this Court should look not simply at what was said or not said in 2011, but at what was not said by counsel, who continues to represent Mr. Coronado, and no one is accusing his current counsel of being ineffective. But when this case went back on remand in 2014, there was no proffer of evidence, there were no affidavits talking about bringing down the negatives. I don't think it's fair to blame Mr. Bodecoffer for the failure to present that type of evidence, to mitigate the negatives, which were substantial. I don't think it's fair to blame him for not putting that on in 2011, when even competent counsel could not, or I should say did not, bring forward that evidence in 2014. Describe for me the proceeding in 2014. So what was open on remand, what happened on remand? After this Court remanded the case to the Board, there was supplemental briefing by both his current counsel and by the government, and the Board re-looked at the two issues that this Court directed it to look at. That was the problem in 2014. When this Court looked at the case, this Court found that the Board had failed to address the ineffective assistance claim and the due process claim that Mr. Coronado had raised pro se to the Board, and that's what this Court said, send it back to the Board, you need to address these things in the first instance. That's what the Board did in 2014. But without having a new hearing in front of an IJ, either of you would reject? That's correct. That's correct, Your Honor. So it's just on the paper record? The only reason I'm not immediately saying yes is because current counsel representing Mr. Coronado before the Board did submit affidavits to the Board. The Board had the benefit at least of those affidavits from Mr. Coronado and from his sister, so there was at least a proffer to the Board as to what the claim was to supplement that ineffective assistance claim. And, again, where those affidavits focused was, I hesitate to say focused, what they talked about was we could have done more had we had better counsel, had the immigration judge not conducted the hearing as he did, to bring out more positives. It's the government's position that the positives weren't the problem here for Mr. Coronado. The weight of the evidence was there on the positive side. Again, the immigration judge's words, much weight must be given to the work history, the long-term residence, the family ties in the United States. That's what made this a close case. Where his claim failed was the negatives were so substantial, a long-term history of drug use that continued well into his 50s and 60s, including a conviction for methamphetamine, after he was already in immigration proceedings. And that's what the immigration judge focused on. I do want to address a couple of points made by counsel. The questions were tough. There's no doubt that these questions by both his counsel and the immigration judge were tough, and I'm not going to stand here on behalf of the government and say they weren't tough. I would urge the ---- Tough, meaning the questions by his counsel tough? Yes, Your Honor, and by the immigration judge. Well, that's a different question. As I read the questions by his counsel, they were adverse to the client. I mean, if somebody ---- if that man were my lawyer, questioning me in that fashion, I would feel betrayed. Your Honor, what I would ---- I understand Your Honor's concern. What I would urge this Court to consider is it was from the answers that were given by Mr. Coronado to questions by the immigration judge to questions from his own counsel, Mr. Coronado was losing this case. It would have been wrong for Mr. Budakoffer to ignore the elephant in the room. Essentially, what you have here is a situation where the trial judge, the immigration judge, is saying to Mr. Coronado, your answers aren't going to win here for you. You need to give me something more. And even his own counsel is recognizing that and is saying, give me more. He's pushing him. Absolutely, Mr. Budakoffer and the immigration judge are pushing Mr. Coronado to give better, more detailed, more responsive answers because the answers he was giving were going to lose the case for him. And those questions then from counsel ---- But it's undisputed that there had been no witness preparation. I don't mean witness coaching in the sense of, you know, asking for false answers. Any competent lawyer prepares his witness, which had not been done. That's the record that we have, Your Honor. This sounds like witness prep, like I'm going to ask you all the hostile questions the other side is going to ask you in preparation for those hostile questions. But the trouble is that wasn't witness prep. That was on the stand. I understand that concern, Your Honor. I think the problem is that's looking at this, the snapshot of this case from 2011. This court has the benefit here in 2018 to see where we are today, but also what happened in 2014. And when this court has addressed claims of ineffective assistance that addressed failure to prepare, Mr. Coronado cites the Lynn case. He cites the Morales-Apollinar case. What this court said and what this court found was not only was there a failure to prepare, but there was a failure to elicit specific evidence, and the court was able to identify in those cases very specific evidence that bore on the request for relief. In Morales-Apollinar, counsel failed to elicit specific evidence with regard to a family member who could have qualified as a relative, qualifying relative for hardship purposes, failed to elicit simple school records that ultimately cost Morales-Apollinar the case, and I think it's fair to mention in that case, the immigration counsel was suspended from the practice of law 12 days after the immigration court hearing. Here, and in Lynn, to address that case briefly, you had a situation where counsel was in New York, did not think she was going to be handling the case on the day of the immigration court hearing, and is pushed by the immigration judge to handle the case. And there was, again, all sorts of information that once effective counsel came in, that information, as this court recognized in Lynn, as Judge Fletcher's decision recognized in Lynn, there was evidence that would have made a difference. That's what's missing here, Your Honor, and I understand Your Honor's concern, but at the end of the day, this case is about balancing the equities. All the positive equities in this case are undisputed. They are. To simply add to that pile of positive equities, that still doesn't get him over the hump, because he still has the substantial negative equities that not only Mr. Burdickhoffer failed to address, but also in 2014, when this court sent the case back to the board, there was no proffer, and to be fair, I can only speculate what could have made a difference. Certainly, this court could send the case back for another hearing. Could you address the question that I asked your opposing counsel? What authority do we have to direct, if any, to direct that there be a new IJ? Can we only request that that be done? Do you have a view on that question? I can't point to a specific piece of authority, but there's certainly precedent from this court and others where there's a strong recommendation made or that it is directed, and as counsel noted, we didn't contest that in our briefing. I do want to emphasize the type of evidence that we're talking about potentially here, I can't stand here and represent what might make a difference, because if this case does go back, it's going to be for a new hearing. But in cases where an individual has convictions, in cases with former gang members, for example, rehabilitative evidence does come in, and that type of evidence could be statements from a pastor. I see my time has expired, if I can respond. Evidence from a pastor, a counselor, an employer who can testify to how that person has made and succeeded at efforts at rehabilitation. That's the type of evidence that not only was not presented in 2011, we don't dispute that, but when he's got good counsel, when Mr. Coronado has good counsel, it's not presented in 2014, and there's been no showing that it's coming today. Thank you, Your Honor. Thank you. A response. Thank you, Your Honor. So the government is suggesting that we have already been granted the relief that we are asking for. In 2014, this court did not remand the case to the BIA for a full hearing on the merits. There has never been another hearing. Excuse me. Were you precluded from introducing the sort of affidavits that were just mentioned? And we did, in fact, Your Honor, submit affidavits. The government is overlooking the fact that we did submit affidavits in order to comply with the Lozada requirements. They are in the record, and the government wants, and the BIA want to minimize what they say, but they are contrary to the findings of the immigration judge, that the family relationships have been negatively impacted due to drug usage. For example, AR-62, Ms. Alvarado's. No, I'm aware of those, but in terms of the sort of rehabilitation evidence. So can we presume that whatever you had, you put in? No, we have more evidence that we would be able to put in, and we explain this in our reply brief. We would call numerous family members. Mr. Coronado has been clean for numerous years now. He's shown a commitment to drug rehabilitation. We would put on, we would call as witnesses his family members, all of whom he has strong relationships with, contrary to the conclusions of the immigration judge, who concluded that, based on the unrehabilitated testimony of his drug usage, that it destroyed his family relationships, essentially. We would also put on court Mr. Coronado himself, who denies that he's a drug addict. His sister denies that he was a drug addict to the degree that the immigration court found. And I just want to, before I run out of time, I do want to direct the court to this court's case law on prejudice, and it is specifically rejected what the government is trying to do here, which is requiring an explanation of exactly what evidence would have been presented in support of the application. That's the Molaris-Applenauer case. It's 514F3rd893. And, you know, the Linn case as well talks about the fact that just because there's a few bare facts that are presented, but without the factual context that gives them meaning or the analytical context that gives them power, that doesn't suffice to place the critical issues before the tribunal that must consider them. We've never had that opportunity. We've never been able to go back to the immigration judge. The fact that we put some of our evidence in, and I can represent the court, it is not the full extent of our evidence, and on the limited remand that was to decide just the issue that the BIA had previously ignored was not an invitation to completely reopen the record. And if we are given that opportunity, we will come forth with abundant evidence, but we believe we already have done that. You're two minutes over. Yes, thank you. I'm sorry, Your Honor. No, thank you very much. Coronado v. Sessions is submitted. Before we move on to the next case, though, I would like to thank you on behalf of the court for your pro bono service. This is not a preview of our decision on the merits. It is really rather just a thank you. We're always grateful for the quality of work that pro bono counsel has done, in particular in this case. Well, thank you, too, but you're getting paid. Thank you very much. The case is submitted. I think he's getting paid pretty well over there, too. Just not in this case.
judges: Graber, W. Fletcher, Owens